JOHN A. REEDER, ADMINISTRATOR, V. CITY OF OMAHA.

FILED MAY 17, 1905. No. 13,814.

Cities: NEGLIGENCE. The cases in this state have established the rule that there must be some direct and immediate connection between the negligence of a city and the damage complained of to entitle a party to recover in an action for damages on account of such negligence.

ERROR to the district court for Douglas county: CHARLES T. DICKINSON, JUDGE. *Affirmed.*

*Bowes & Hodder,* for plaintiff in error.

*C. C. Wright* and *W. H. Herdman, contra.*

DUFFIE, C.

Block 66, in Credit Foncier Addition to the city of Omaha, is bounded on the east by Sixth street, on the north by Center street, on the west by Seventh street and on the south by Cedar street. A deep ravine enters said block near the southeast corner, extending across the same and, as we understand, across Seventh street into the block west. Some 20 years ago or more the city graded Sixth and Cedar streets, filling the ravine at the intersection of these two streets at the southeast corner of block 66. Because of a failure on the part of the city to make adequate provision for a discharge of the water, a large pond was formed which, after a heavy rain, extended into the street at the intersection of Seventh and Center streets from 5 to 15 feet, but at no time did the water come nearer than 2 or 3 feet of the foot of the slope made by grading

Sixth street, and ordinarily the edge of the water on the east side of the pond and nearest Sixth street was about 60 feet from the west line of said street. It further appears that the bank formed by the grade of Cedar street, and adjoining the pond on the south, was very abrupt; that this bank was about 60 feet above the level of the water in the pond, and the pond was surrounded with weeds and willows which made it difficult of access from either Cedar or Sixth street except by a path which extended from about the middle of block 66 on Sixth street in a southwesterly direction to the edge of the pond, the distance from the point where the path left Sixth street to where it reached the pond being from 60 to 70 feet. In July, 1900, Austin Reeder, the plaintiff's intestate, was playing with some other boys on Howard or Jackson street, a mile or more northwest of this pond. One of the boys suggested going to the pond for the purpose of taking a swim. The Reeder boy, aged about 9 years, with two other of his companions thereupon proceeded along Tenth, Eighth and Sixth streets to the point where the path above spoken of diverges from Sixth street, running southwesterly to the pond, and followed this path down to the water's edge. After playing in the water for some time, they came out and started to dress, when the Reeder boy went back to take a slide down the bank into the water, and getting beyond his depth, was drowned. It is further shown that at the time of the accident there was no sidewalk extending along the west side of Sixth street for a half block north of Cedar street, which would be at a point on Sixth street directly east of the pond. After the plaintiff had rested, the court gave a peremptory instruction to the jury to return a verdict for the defendant, and the only question argued on the submission of the case was the correctness of this instruction.

In *Richards v. Connell*, 45 Neb. 467, it was held: "The owner of a vacant lot upon which is situated a pond of water or dangerous excavation is not required to fence it, or otherwise insure the safety of strangers, old or young,

who may resort to said premises not by invitation, express or implied, but for the purpose of amusement or from motives of curiosity." This rule was referred to with approval by Judge SEDGWICK in an elaborate opinion in *Tucker v. Draper*, 62 Neb. 66, where it is said: "We have no doubt that under the facts in that case the law was correctly applied."

It may be considered settled therefore that in this state the owner of property is under no obligation to guard a pond situated thereon against trespassers, or to provide for the safety of any who resort to the premises for their own satisfaction, and not by the invitation, express or implied, of the owner. Where the owner extends an invitation to the public to make use of dangerous premises, he will be liable for damages arising from his neglect to take such proper precautions against accidents as would occur to the ordinary mind; and if the evidence is conflicting on the question of an invitation to use the premises, it should be submitted to the jury. This rule is well illustrated and explained in the opinion of Judge SEDGWICK above referred to.

A municipal corporation cannot ordinarily be made liable for damages sustained in consequence of its neglect unless made so by statute. The charter of the city of Omaha places upon the city the duty of keeping its streets and alleys in safe condition, and there can be no question that where damages are incurred in consequence of a neglect of this duty the city is liable. Had the accident in this case occurred to the Reeder boy from a use of Seventh street or Cedar street where the water overflows the same, then, under the holding in *City of Omaha v. Richards*, 49 Neb. 244, and *City of Omaha v. Bowman*, 63 Neb. 333, the liability of the city would be beyond dispute. The evidence, however, is undisputed that the accident did not occur from a use of the streets of the city. While the pond extended over Seventh and a part of Cedar street, the boy did not use these streets, nor did he enter the pond from either street. At the point where he left Sixth street

to reach the pond, he was as safe as at Howard or Jackson streets, before a visit to the pond had been suggested. In *City of Omaha v. Richards, supra,* it was said:

"It is quite immaterial whether he was drowned in the water in the street or on the adjacent premises, in close proximity to the street, since the negligence of the city caused the accumulation of the water, consisting of a single body extending nearly one-fourth the distance across the street to the abutting properties, and further, the raft containing the deceased floated from the street upon properties abutting thereon. * * * It would have been different if the pond had been entirely upon private property and not in close proximity to a street. In such case there would be no liability upon the city, since it would have been guilty of no breach of duty. It is undisputed that this pond of water extended into the street, and the city cannot escape liability merely because the drowning occurred upon the adjacent premises."

The entire thought of the opinion is that the boy used the street and the water overflowing the street to reach the point where the accident occurred and where the drowning took place, and it is quite evident that the city could not escape liability because the death of the boy did not occur in water covering the street, if such water was made use of to reach the point where the fatality finally occurred.

The record first presented to this court in *City of Omaha v. Bowman,* 52 Neb. 293, discloses that young Bowman, with some boy friends, took up part of a sidewalk laid on Davenport street and launched it on a pond which was about seven feet from the sidewalk, and the level of the water some feet below the sidewalk. Under this state of the record this court held that the city was not liable for the accident which occurred, it not appearing that the water from the pond overflowed the street or was in dangerous proximity thereto. An amended petition was filed in the district court covering this defect, and on error taken from an order sustaining a demurrer to said peti-

tion it was held that a municipal corporation is liable for the death of a child who was drowned in a pond of water situate in part on a public street and in part on abutting lots, when shown that the accumulation of water was occasioned by the negligence of the city in filling in the street with earth; that no fence or barrier was erected, and that the child entered the pond from the street. The case being remanded for a trial, and judgment going against the city, it was again brought to this court, and the judgment affirmed, the court saying that the evidence supported the allegations of the petition, which the former opinion held alleged facts stating a cause of action against the city.

Our examination of these cases leads us to the conclusion that they establish the rule that some direct connection between the injury complained of and the negligence of the city must be shown in order that the plaintiff may recover. That the street of a city may be overflowed with the waters of a pond created by the act of the city could matter nothing to those who had no occasion to use the street, or to those using it at a place distant from the point of overflow; but where the water covering the street is used by one who has not attained the age of discretion, and whose tender years preclude the charge of contributory negligence, to reach a dangerous place in the pond where the water is beyond his depth, the case is different, and the city should answer for its neglect.

Because there was no direct connection between the negligence charged against the city and the accident to the boy, the district court properly directed a verdict in the case, and we recommend an affirmance of the judgment.

ALBERT and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion the judgment of the district court is

AFFIRMED.